Bradlee<br>v.<br>Boston<br>Glass Co.

*Plaintiffs nonsuit.*

---

## Simon C. Hewitt *versus* Lewis Charier, Junior.

A person who practises bonesetting and reducing sprains, swellings and contractions of the sinews, by friction and fomentation, but no other branch of the healing art, is a person practising surgery, within the meaning of *St.* 1818, *c.* 113, § 1, which provides, that no person practising physic or surgery shall be entitled to the benefit of law for the recovery of his fees, unless he shall have been licensed by the Massachusetts Medical Society or graduated a doctor in medicine in Harvard University.

The *St.* 1818, *c.* 113, § 1, is not unconstitutional as being a violation of the 6th article of the Declaration of Rights, which provides that no corporation or association of men have any other title to obtain advantages or particular and exclusive privileges distinct from those of the community, than what arises from the consideration of services rendered to the public.

Assumpsit for services in attempting to cure the defendant's son of a contraction of the sinews in the neck.

The parties stated a case.

The defence set up was, that the plaintiff had not been licensed by the Massachusetts Medical Society, nor been graduated as a doctor of medicine.

It was agreed, that the plaintiff professed and practised bonesetting, and reducing sprains, swellings and contractions of the sinews, by friction and fomentation, but no other branch of the curing art.

The questions raised were : 1. Whether the plaintiff was within the operation of the provision of *St.* 1818, *c.* 113, § 1 ; and 2. Whether such provision was unconstitutional.

The plaintiff was to be nonsuited, or the defendant defaulted, according to the opinion of the Court.

*F. Dexter* and *Gardiner*, for the plaintiff.

*D. L. Child*, for the defendant, cited Encycl. Method. *Chirurgie ; Spaulding* v. *Alford*, 1 Pick. 33 ; 5 Com. Dig.

*March 18th*

*Physician, A, D ; Case of the College of Physicians,* Little-ton's R. 351.

SHAW C. J. delivered the opinion of the Court    There is now no doubt, that, by the common law, physicians and surgeons, undertaking to practise those professions, are responsible, not only for due care and diligence, but for that degree of skill and capacity which ordinarily belong to those who practise them, and this will depend much upon the state of science and the means of education at any particular period. *Seare* v. *Prentice,* 8 East, 348.    They are placed in this respect upon the same footing with attorneys, brokers, carriers, pilots, and persons of many other professions and callings, who undertake to perform services, requiring knowledge and skill, for reward.    In undertaking to perform the service, there is an implied undertaking, that the party has, and will bring to the performance of it, this ordinary and competent skill ; and the reward, by being adapted to the requisite skill, is a compensation for such skill, and renders the undertakings of the parties equal and mutual.

But the legislature of this Commonwealth, from a due regard probably to the importance of the lives and health of the citizens, and the deep interest which they have in this profession, and wisely acting upon the maxim drawn from the profession itself, " that prevention is better than cure," not content with holding the ignorant, careless and unskilful responsible in damages, have provided by positive enactment, for giving· encouragement to those, who before they engage in the practice shall give evidence of their having enjoyed the means of a good professional education, and faithfully availed themselves of them, by requiring such persons to obtain the sanction and permission of those who have the best means of judging of their qualifications, the members of the Medical Society, or the customary sanction of a degree from the University, known to have a medical faculty and to be otherwise amply provided with the means of affording a good professional education.    *St.* 1818, c. 113, § 1.    This statute provides, that no person practising physic or surgery shall be entitled to the benefit of law for the recovery of any debt or fee for his professional services, unless he shall, previously to

rendering such services, have been licensed by the Medical Society, or been graduated a doctor in medicine at Harvard University.

The first question for the Court is, whether, upon the facts agreed, the plaintiff can be held to be engaged in the practice of physic or surgery. It appears that he professes and practises bonesetting and reducing sprains, swellings and contractions of the sinews, by friction and fomentation ; but no other department of the curing art. By bonesetting we understand the relief afforded as well in cases of dislocation, as in those of fracture. The Court are of opinion, that this brings him within the meaning of the statute, as one who practises physic or surgery. We think it not necessary for one to profess to practise generally, either as a physician or surgeon, to bring him within the operation of this statute, but that it extends to any one engaging in practice in a distinct department of either profession, and that the plaintiff's practice forms a considerable department in the practice of surgery.

It has however been insisted, that this statute is unconstitutional and void, as being contrary to the 6th article of the Bill of Rights : viz. " No man nor corporation or association of men, have any other title to obtain advantages or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public ; and this title being in nature neither hereditary nor transmissible to children, or descendants, or relations by blood, the idea of a man born a magistrate, lawgiver or judge, is absurd and unnatural."

Taking the whole article together, we think it is manifest, that it was especially pointed to the prevention of hereditary rank, and the privileges attributed to birth. But applying the first clause in the article according to its literal meaning, we think, that in considering its operation upon any particular enactment, it is necessary to consider whether it was the intent, or one of the leading and substantive purposes of the legislature, to confer an exclusive privilege on any man or class of men. Many legislative acts have a direct effect to confer on persons and sections of country very important advantages, such as those establishing roads, bridges, ports,

Hewitt
v.
Charier.

and very many others, which have an immediate effect to enhance the value of real estate, to encourage particular branches of trade, and in various ways to confer valuable privileges. But when this is indirect and incidental, and not one of the purposes of the act, it cannot be considered as a violation of this article of the Bill of Rights.

It appears to us, that the leading and sole purpose of this act was to guard the public against ignorance, negligence and carelessness in the members of one of the most useful professions, and that the means were intended to be adapted to that object. If the power of licensing were given to the Medical Society, exclusively, there would be much more plausible ground, at least, to maintain, that the power was conferred on a body who would have a temptation to abuse it, so as to promote their private interests ; but where the power is conferred equally on the University charged with the great interests both of general and professional education, and which cannot be perceived to have any such interest, that ground o. argument seems to be wholly removed ; and it seems difficult to perceive how a power which it is important to the community should be placed somewhere, could be placed more safely. The Court are all of opinion, that the law in question is not repugnant to the article of the Bill of Rights, above cited, and that its validity cannot be impeached on the ground, that it is a violation of any principle of the constitution.

*Plaintiff nonsuit*